# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VARDANYAN,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ANTONIO GONZALES, et al.,<br><br>　　　　Respondents. | 1:07-cv-01246-OWW-TAG-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br>(Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN FIFTEEN DAYS |

　　　Petitioner, currently in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") and proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, on August 27, 2007. (Doc. 1).

## **BACKGROUND**

　　　In his petition, Petitioner alleges that he is a native of Armenia who last entered the United States in 1997. (Doc. 1, p. 3).[1] The petition alleges that Petitioner is subject to a final order of removal issued on February 8, 2007. (Id. at p. 2). Petitioner alleges that he was first detained by ICE at the Lerdo Detention Facility in Kern County, California, on February 8, 2007, and has been detained at that facility ever since. (Id. at p. 3).

---

[1] Respondents asserts that Petitioner last entered the United States on October 1, 1996 on a non-immigrant visa with authorization to remain through November 19, 1997. (Doc. 14, p. 2). The disparity in dates of entry into this country is not relevant to the Court's determination of this petition.

1

On November 30, 2007, the Court ordered Respondents to show cause why the petition should not be granted. (Doc. 10). On January 28, 2008, Respondents filed a response to the order to show cause, contending that Petitioner's continued detention was proper because he had failed to cooperate with Respondents in obtaining travel documents required to effect his removal to Armenia. (Doc. 14). Respondents contend, based upon information supplied by the Armenia government, which has refused to issue travel documents for Petitioner, that Petitioner has given false information to Respondents regarding his country of origin, that he is not Armenian, that his correct name and nationality are not known, and that until Petitioner cooperates in his removal by providing accurate information, Respondents will not be able to secure his removal. (Id. at p. 5).

On February 25, 2008, Petitioner filed a reply, asserting that he is Armenian, that he was born on September 24, 1962 in the city of Yerevan, that he came to the United States in October 1997 on an Armenian passport issued by the government of Armenia in August 1997, that he has cooperated with Respondents in the removal process, that he wants to return to Armenia, but that Armenia is refusing to issue travel documents because of his criminal record. (Doc. 17, p. 6).

## **DISCUSSION**

In the instant case, Petitioner alleges that his mandatory and indefinite detention by ICE is in violation of the Fifth Amendment of the U.S. Constitution and in violation of Respondents' statutory authority.   This issue was addressed by the United States Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001).

In Zadvydas, the Supreme Court held that the Immigration and Nationality Act's ("INA") post-removal-period detention statute does not permit indefinite detention, but instead implicitly "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvyas, 533 U.S. at 689.  The Supreme Court, attempting to limit those occasions when the federal court would need to make such "difficult judgments," set a "presumptively reasonable period of detention" of six months. Id. at 700-701. The burden is on the alien to show that there is no reasonable likelihood of repatriation. Id. at 701 ("This 6-month presumption, of course, does not mean that every alien not removed must be

released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). After six months, and once an alien makes a showing that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

In the instant case, Petitioner has been in ICE custody following a final order of removal since February 8, 2007. The record in this case indicates that Petitioner entered the United States in 1996 on a visa, and remained in this country beyond the expiration date of his visa. The record further indicates that Petitioner was convicted of the crimes of second degree burglary and battery on a peace officer on December 12, 2005, that Petitioner served a prison term of two years and eight months, and that at the conclusion of his sentence, Petitioner was detained and placed into ICE custody, where he has remained pending removal. (Doc. 14-3, Declaration Of Yuriy Mikhaylov dated January 23, 2008 ("Mikhaylov Dec."))[2].

It is undisputed that Respondents have sought Petitioner's removal by requesting the issuance of travel documents from the government of Armenia. The documents provided by Petitioner himself indicate that Petitioner completed all travel documents to effect his removal to Armenia, that he has had friends go to the Armenian Consulate to request the issuance of such documents, and that on February 19, 2007, a travel document application was sent to the Armenian Consulate in Los Angeles, California, but the Armenian Consulate responded on March 29, 2007 that it was unable to comply because of the absence of a relevant record proving that Petitioner was an Armenian citizen. (Doc. 17, Attach. 2). The record also indicates that a second request was made to obtain travel document based on additional information gathered by Respondents, but that on June 18, 2007, the Armenian Consulate notified Respondents that an individual with Petitioner's name "has never been issued an Armenian National Passport" and that "no registration record has been found [for Petitioner] at the Passport and Visa Department of the Ministry of Internal Affairs of the Republic of Armenia." (Doc. 17, Attach. 12).

---

[2] The document number refers to the Court's electronic docketing header numbers. The declaration of Yuriy Mikhaylov is attached to Respondents' response to the order to show cause. (Doc. 14).

On January 18, 2008, Respondents sent Petitioner a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), in which Respondents notified Petitioner that the government of Armenia had concluded that Petitioner's passport was fraudulent. (Doc. 14-1). The Declaration of Yuriy Mikhaylov, a Detention and Deportation Officer with ICE who is involved in Petitioner's case, indicated that Petitioner's "true identity is not known at this time. Mr. Vardanyan has not been forthcoming about his true identity or otherwise cooperative in attempts to obtain a travel document. Until Mr. Vardanyan's true identity is know, it is not anticipated that he will be released from ICE custody." (Doc. 14-3, Mikhaylov Dec., p. 2).

In Zadvydas, the aliens were detained by ICE pursuant to 8 U.S.C. § 1231(a)(6), which provides that certain classes of aliens, including those removable due to criminal convictions and those deemed a risk to the community, may be detained beyond the standard ninety-day period. Zadvydas, 533 U.S. at 682. By contrast, Petitioner appears to be held by ICE pursuant to 8 U.S.C. § 1231(a)(1)(C), which provides as follows:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period *if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure* or conspires or acts to prevent the alien's removal subject to an order of removal. (Emphasis supplied).

The Ninth Circuit has held that § 1231(a)(1)(C) does *not* present the same constitutional concerns as § 1231(a)(6), because the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his or her own detention. Pelich v. I.N.S., 329 F.3d 1057, 1060 (9th Cir. 2003). In Pelich, petitioner, a native of Poland, legally entered the United States as a refugee, but was later convicted of felony embezzlement and detained by the Immigration and Naturalization Service ("INS") upon his release from prison. Pelich, 329 F. 3d at 1058. When the INS attempted to effect Pelich's removal to Poland, the Polish consulate supplied a passport application to enable the consulate to determine whether Pelich was eligible for Polish travel documents. Id. Pelich repeatedly refused to complete the Polish passport application because he claimed his father was German and therefore he was not a Polish citizen. Id.

///

The Ninth Circuit held that Pelich could not "squeeze his case into the confines of Zadvydas." Pelich, 329 F. 3d at 1059. "Unlike the aliens in Zadvydas, Pelich has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the INS." Id. at 1060 (citation omitted). Thus, the Ninth Circuit concluded that a petitioner who impedes removal efforts "has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Similarly, in Lema v. I.N.S., 341 F.3d 853 (9th Cir. 2003), the Ninth Circuit held that "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 856. Lema was an Ethiopian national detained by INS as an alien removable under 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony (delivering cocaine). Id. at 854. After the immigration judge issued a final order of removal, Lema applied for travel documents from the Ethiopian Embassy, but, in so doing, claimed he was actually from Eritrea, not Ethiopia. Id. at 855. Based upon this misrepresentation, Ethiopian officials refused to grant him travel documents. Id. Citing Pelich, the Ninth Circuit upheld the district court's denial of Lema's habeas corpus petition based upon his failure to cooperate in the securing of travel documents from Ethiopia. Id. at 856. The Court explained its reasoning as follows:

> We cannot know whether an alien's removal is a "remote possibility," Zadvydas, 533 U.S. at 690, 121 S.Ct. 2491, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal.

Id. at 856-857.

In other words, an alien who impedes efforts to remove him has not met his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future, and the petition for writ of habeas corpus must therefore be denied. Lema, 341 F.3d at 856-857; Pelich, 341 F.3d at 1060.

///

///

5

In the instant case, the central issue regarding Petitioner's ongoing detention is a factual dispute between the parties: ICE contends that, consistent with the conclusion of the Armenian government, Petitioner entered the United States on a fraudulent passport, that Petitioner's true identity and nationality are not known, and that therefore he has not cooperated with ICE in his removal.  On the other hand, Petitioner maintains that he has done everything possible to effect his removal, that he is indeed the individual named on the passport and that the passport was lawfully issued by the government of Armenia, and that his native country is obstructing his removal because of his criminal record in the United States.

This Court must review Respondents' factual findings for "substantial evidence," reversing those findings only if the evidence is so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged.  Lema, 341 F. 3d at 855; Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997) (citing I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 817 (1992)).  While Petitioner's version of events, i.e., that Armenia refuses to issue travel documents solely because of Petitioner's criminal history, is certainly not implausible, neither is the evidence relied upon by Respondents.  Respondents' evidence includes a determination by the Armenian government, based on information supplied by both Petitioner and Respondents, that no lawful passport was ever issued by that government to Petitioner and that no records can be located to verify that he is an Armenian citizen.  Based upon this, Respondents have concluded that Petitioner has not provided accurate information regarding his travel documents. While this evidence supporting Respondents' conclusion is far from overwhelming, the Court cannot conclude at this time that "no reasonable factfinder could fail to find the facts were as [Petitioner] alleged." Lema, 341 F.3d at 855.

Accordingly, the Court must accept the facts as found by Respondents, i.e., that Petitioner has not cooperated in his removal and that, in fact, Petitioner's misrepresentations regarding his identity and nationality have prevented Respondents from successfully effecting his removal. Under such circumstances, and based on the state of the present record, the Court has no alternative but to recommend denying the petition.  8 U.S.C. § 1231(a)(1)( c); Lema, 341 F. 3d at 855.

**RECOMMENDATIONS**

For the foregoing reasons, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus (Doc. 1), be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 29, 2008**              **/s/ Theresa A. Goldner**
                                           UNITED STATES MAGISTRATE JUDGE